No. 22-16544

# IN THE UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

**NEVADA CHAPTER OF THE ASSOCIATED GENERAL CONTRACTORS OF AMERICA, INC., et al.,**
Plaintiffs/Appellants,

v.

**MARTY WALSH, Secretary, United States Department of Labor,**
Defendant/Appellee.

On Appeal from the United States District Court
for the District of Nevada
No. 3:21-cv-00430-MMD-CLB
Hon. Miranda M. Du

## APPELLANTS' REPLY BRIEF

Adam Hosmer-Henner
Philip Mannelly
McDONALD CARANO LLP
100 W. Liberty Street, Tenth Floor
Reno, Nevada 89501
Tel.: (775) 788-2000

Maurice Baskin
LITTER MENDELSON P.C.
815 Connecticut Avenue, NW, Suite 400
Washington, D.C., 20006-4046
Tel.: (202) 772-2526

*Attorneys for Plaintiffs/Appellants*

# TABLE OF CONTENTS

**TABLE OF CONTENTS** ........................................................................ ii

**TABLE OF AUTHORITIES** ................................................................ iii

**SUMMARY OF ARGUMENT** .............................................................. 1

**ARGUMENT** ........................................................................................ 4

     I.     The Department Violated the Plain Language of the Act Limiting
            Prevailing Wage Determinations to the "Civil Subdivision
            of the State" Where the Work is to be Performed ................................ 4

     II.    The Department Fails to Show Compliance With Its Own
            Published Regulations; Alternatively, Such Regulations Are in
            Conflict With the Act and Must be Set Aside .................................... 10

     III.   The Department's Brief Fails to Justify Its Refusal to Consider
            Publicly Available NOLC Data ........................................................... 14

**CONCLUSION** .................................................................................. 19

**CERTIFICATE OF COMPLIANCE** .................................................. 20

**CERTIFICATE OF SERVICE** ........................................................... 21

# TABLE OF AUTHORITIES

## Cases

*Batterton v. Francis*,
  432 U.S. 416 (1977)...............................................................................6, 9

*Bldg. & Constr. Trades' Dep't v. Donovan*,
  712 F.2d 611 (D.C. Cir. 1983)................................................................8

*Castillo v. Metro Life Ins. Co.*,
  970 F.3d 1224 (9th Cir. 2002) ..............................................................11

*Chesapeake Coalition*,
  ARB No. 12-010 .....................................................................................17

*Chevron USA, Inc. v. Natural Resources Defense Council, Inc.*,
  467 U.S. 837 (1984)................................................................................5

*Chrysler Corp. v. Brown*,
  441 U.S. 281 (1979)................................................................................7

*City of Arlington v. FCC*,
  569 U.S. 290 (2013)................................................................................5

*Dep't of Homeland Security v. Regents of the Univ. of Calif.*,
  140 S. Ct. 1891 (2020)............................................................................6

*District of Columbia v. Department of Labor*,
  819 F.3d 444 (D.C. Cir. 2016).................................................... 5, 8, 9

*El Comite Para El Bienestar de Earlimart v. Warmerdam*,
  539 F.3d 1062 (9th Cir. 2008) ..............................................................12

*Exxon Mobile Corp. v. Allapattah Services, Inc.*,
  545 U.S. 546 (2005)............................................................................7, 8

*Loper Bright Enterprises v. Raimondo*,
  No. 22-451 ..............................................................................................5

*Milner v. Dep't of the Navy*,
  562 U.S. 562 (2011) ............................................................... 5, 7, 8

*Mistick Construction*,
  ARB No. 04-051 (Mar. 31, 2006) ........................................................17

*NEW Nat'l Elec. Contractors Ass'n*,
  ARB No. 03-020 (October 19, 2004) ..................................................17

*NLRB v. SW Gen., Inc.*,
  580 U.S. 288 (2017) .............................................................................7

*Safer Chems., Healthy Families v. EPA*,
  943 F.3d 397 (9th Cir. 2019) .............................................................12

*Univs. Rsch. Ass'n v. Coutu*,
  450 U.S. 754 (1981) ........................................................................4, 6

*Waterman S.S. Corp. v. United States*,
  381 U.S. 252 (1965) .............................................................................7

**Statutes**

40 U.S.C. § 3142(b) ...........................................................................2, 4

**Regulations**

29 C.F.R. § 1.2(a) ................................................................. 3, 10, 13, 14

29 C.F.R. § 1.2(b) ................................................................ 3, 10, 13, 14

29 C.F.R. § 1.3 ...................................................................................15

29 C.F.R. § 1.3(b)(3) ..........................................................................15

29 C.F.R. § 1.3(b)(6) ..........................................................................15

29 C.F.R. § 1.7(a) ...............................................................................10

29 C.F.R. § 1.7(b) ........................................................ 3, 10, 12

29 C.F.R. § 1.7(c) ........................................................ 10, 11, 12

29 C.F.R. Part 1 ............................................................ 3

## SUMMARY OF ARGUMENT

The Department's brief concedes, as it must, that the Davis-Bacon Act (the Act) requires contractors on federal construction projects to pay workers only the "local prevailing wage where the work is to be performed." [Dept. Br. 9]. But the Department has not identified any construction workers in Northern Nevada who are paid wage rates equal to workers in Las Vegas, hundreds of miles away. The Department has thereby conceded that Las Vegas wage rates are not paid to construction workers in Northern Nevada. As a result, the wage rates imported by the Department into the challenged wage determinations for Northern Nevada's civil subdivisions cannot be characterized as "prevailing" in Northern Nevada under any plausible definition of that term. Because this fact is undisputed, the Department's actions must be found to violate the plain language of the Davis-Bacon Act, and the district court's decision must be reversed.

To evade that result, the Department's brief advances a novel *post hoc* rationalization seeking to rewrite the Act's plain language to allow consideration of any "similar" construction work performed anywhere, *regardless* of the civil subdivision where such work was performed. [Dept. Br. 20–21, 28]. Neither the district court nor the Department's Administrative Review Board (ARB) advanced such a breathtaking expansion of the Act's plain language, and the Department's reinterpretation of the Act in its brief is contradicted by settled case law and the text

of the Act itself. The Act's plain language expressly requires the Administrator to determine the rates "prevailing for the corresponding classes of laborers and mechanics employed on projects of a character similar to the contract work *in the civil subdivision of the State in which the work is to be performed*." 40 U.S.C. § 3142(b) (emphasis added). This language plainly prohibited the Administrator from using wage data from totally different labor markets in distant parts of the state and from disregarding wage data from within the civil subdivisions at issue to determine the prevailing wages of workers in Northern Nevada. The work at issue is to be performed (and is being performed) in Northern Nevada, not Clark County in Southern Nevada hundreds of miles away. The Department's discretion does not extend so far as to dispense with the "civil subdivision of the State" requirement altogether, which the Department's brief now seeks to do without any authorization.

None of the legislative history relied on by the Department (or the district court) permits the Department to eliminate the civil subdivision requirement from the Act. Indeed, no resort to legislative history is required or permitted here, because the Act's language is plain on its face; but in any event, nothing in the legislative history authorizes erasing the requirement that the "prevailing" wages shall be based on the wages paid in the civil subdivision in which the work will be performed, in favor of an arbitrary statewide survey process.

In a like manner, contrary to the district court decision, the Department's published regulations prohibit the Administrator from importing wage data from anywhere outside the "surrounding counties" being surveyed. 29 C.F.R. § 1.7(b). The regulations do not authorize the Administrator to import data from parts of the state that are distant from the civil subdivision in which the work is to be performed, particularly when the wages paid in such distant labor markets are known to differ widely from the rates in the area being surveyed. 29 C.F.R. Part 1. To the contrary, the regulations specifically define the "prevailing wage" as "the wage paid to a majority (more than 50 percent) of the laborers and mechanics in the classification on similar projects *in the area* during the period in question" (29 C.F.R. § 1.2(a)) and that the "area" means only "the city, town, village, county, or *other civil subdivision of the State* in which the work is to be performed." 29 C.F.R. § 1.2(b) (emphasis added). To the extent the Department's brief interprets its regulations to permit such importation of rates, then the regulations themselves (as misinterpreted) violate the plain language of the Act.

The Department's brief fares no better in its efforts to justify the district court's failure to require the Department to consider publicly available wage data maintained by the Nevada Office of the Labor Commissioner (NOLC). Had the Administrator considered such wage data for the Northern Nevada civil subdivisions at issue in this case, there would have been no need for the Administrator to import

and improperly consider wage rates from distant parts of the state, which it knew or should have known were dramatically higher than the wage rates prevailing in the relevant civil subdivisions, even under the Department's erroneous interpretation of the Act and the governing regulations.[1]

For all of these reasons, as further explained below and in Appellants' opening brief, the district court decision should be reversed and the Department's challenged wage determinations should be set aside.

## ARGUMENT

### I. The Department Violated the Plain Language of the Act Limiting Prevailing Wage Determinations to the "Civil Subdivision of the State" Where the Work is to be Performed.

As explained in Appellants' opening brief, the plain language of the Act requires the Secretary to determine the "prevailing wages" for corresponding classes of laborers and mechanics "employed on projects of a character similar to the contract work in the civil subdivision of the State in which the work is to be performed." 40 U.S.C. § 3142(b); *see also Univs. Rsch. Ass'n v. Coutu*, 450 U.S. 754, 773–74 (1981) (holding that the Act was meant to "protect local wage standards" by requiring contractors to base their bids on the wages "prevailing in the

---

[1] The Department's brief does not contest the district court's finding as to Appellants' standing [Dept. Br. 15, n.3], which was well supported by the record below and Appellants' opening brief [App. Br. 21–23]; so that issue will not be further argued in this Reply.

area"). Such plain and unambiguous statutory language cannot be overridden by overbroad agency regulations or ambiguous legislative history. [App. Br. 23–25], *citing District of Columbia v. Department of Labor*, 819 F.3d 444, 451–52 (D.C. Cir. 2016) (relying on, among other cases, *Chevron USA, Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843, n.9 (1984) (Step One),[2] *Milner v. Dep't of the Navy*, 562 U.S. 562, 569 (2011), and *City of Arlington v. FCC*, 569 U.S. 290, 297 (2013)).

In response, the Department's brief asserts for the first time that the words "projects of a character similar to" in the statute somehow override the requirement that prevailing wages be determined in each civil subdivision. [Dept. Br. 20–21, 28]. No such contention appears in the district court's opinion (1-ER-15), nor in the challenged decision of the Department's Administrative Review Board. (2-ER-58–59).[3] The Department's brief thus engages in impermissible *post hoc* rationalization by relying on a novel statutory interpretation that was never articulated by the ARB.

---

[2]     The Supreme Court recently granted *certiorari* to address the question whether the Court should overrule or at least clarify *Chevron* deference to an agency where a governing statute is silent or ambiguous. *Loper Bright Enterprises v. Raimondo*, No. 22-451. It is unnecessary to reach that question in the present appeal because the statute is clear and unambiguous. But the grant of certiorari in the *Raimondo* case casts doubt on the Department's claim of deference even if the statute were ambiguous, which it is not.

[3]     As previously shown in Appellants' opening brief, the district court and the ARB ignored the statutory text altogether, based upon their unsupported view that the determination of prevailing wages was left to the "complete discretion" of the Department. (1-E-15, 2-E-58), discussed at length in [App. Br. 13, 15–16, 25–26].

*See Dep't of Homeland Security v. Regents of the Univ. of Calif.,* 140 S. Ct. 1891, 1909 (2020) (holding that courts must rely only on "contemporaneous explanations for agency action" and that "[p]ermitting agencies to invoke belated justifications, on the other hand, can upset 'the orderly functioning of the process of review'").

If adopted, the Department's new reading of the Act would erase from the statute the requirement that the Department determine prevailing wage rates "in the civil subdivision of the state in which the work is to be performed." The Department's reading would permit a limitless selection of wage data by the Department, regardless of whether such wages actually "prevail" locally in the civil subdivision (or have ever been paid in the local civil subdivision), in direct contradiction of the Supreme Court's statement of the Act's objective: to protect "local" wage standards. *Coutu,* 450 U.S. at 773–74. The Department's attempted re-definition of the statutory term "prevailing in the civil subdivision," in the circumstances of this case, "bears no relationship to any recognized concept" of that statutory phrase. *See Batterton v. Francis*, 432 U.S. 416, 425 (1977). Nothing in the Act's language authorizes the Secretary to impose a prevailing wage on the civil subdivisions at issue here that is only paid to workers employed on projects somewhere else — *i.e.*, hundreds of miles away in the significantly different labor market of Las Vegas.

The Department also wrongly claims that the Act's legislative history "confirms the correctness" of the agency's position that it has the authority to use data from anywhere in a state to establish the prevailing wage in a civil subdivision. [Dept. Br. 22]. That is simply not the case, and it is well settled that legislative history cannot supersede plain statutory language. [App. Br. 29–31], *citing Milner*, 562 U.S. at 569 ("Legislative history…is meant to clear up ambiguity, not create it"); *Exxon Mobile Corp. v. Allapattah Services, Inc*., 545 U.S. 546, 557 (2005).

The Department [Dept. Br. 23], acknowledges Appellants' citation to numerous Supreme Court cases barring reliance on the remarks of individual legislators. [App. Br. 31–32]. But the Department then ignores the Court's holdings and continues to rely on exactly this type of disapproved legislative history in defiance of the Supreme Court's rejection of such "evidence" of Congressional intent. *Chrysler Corp. v. Brown*, 441 U.S. 281, 311 (1979); *NLRB v. SW Gen., Inc*., 580 U.S. 288, 306 (2017); *see also Waterman S.S. Corp. v. United States*, 381 U.S. 252, 269 (1965) (non-contemporaneous committee reports given little weight in inferring the intent of an earlier Congress).

As previously noted by Appellants [App. Br. 28–29], and not disputed by the Department, the sole legislative history cited by any previous court refers only to use of data from "surrounding" or "nearby" counties, and only where it could be shown that no construction work had been performed in the local area, unlike here

where many construction workers perform work in Northern Nevada every day without their wages being acknowledged in the Department's wage surveys. *Bldg. & Constr. Trades' Dep't v. Donovan*, 712 F.2d 611, 618 (D.C. Cir. 1983). In the present case, as in *District of Columbia*, the Department's application of such sparse legislative history, in effect asks this Court to engage in impermissible rewriting of the statutory text, by "erasing" the phrase — "in the civil subdivision of the State." 819 F.3d at 451–52 (c*iting Milner*, 562 U.S. at 569 and *Exxon Mobile Corp.,* 545 U.S. at 557).

It remains undisputed here that construction within the specified classifications was being performed by many construction workers in Northern Nevada throughout the wage survey period — and that the Department knew or should have known of such work — but the Department failed to collect or consider accurate and readily available data on the work during the arbitrary time period of the wage survey. No court prior to now has allowed the Department under such circumstances to import non-prevailing, state-wide wage determinations paid only to workers hundreds of miles away into the wage determinations for civil subdivisions, where it was known that construction workers were performing similar local projects at dramatically different prevailing rates from the imported wage data.

In this regard, the Department asserts that statewide collection of wages was necessary because of the absence of data in Northern Nevada, ignoring many other

options that could have been adopted consistent with the Act's plain language. Appellants' opening brief described several of these alternative options solely to show the falsity of the Department's prior justification of its actions. Contrary to the Department's argument, Appellants do not ask this Court to decide whether one alternative is "better" than another. [Dept. Br. 32]. Rather, Appellants have pointed out that the Department's excuse for failing to comply with the Act's text — the supposed absence of necessary wage data in the Northern Nevada counties — was hollow. [App. Br. 42].

As previously argued in Appellants' opening brief, and again not disputed by the Department, the challenged wage determination(s) here imposed wage rates from a part of Nevada where wages are *known to be substantially higher* than the "local wage standard" in Northern Nevada. In other words, it is undisputed that the Las Vegas area wage rates were known *not* to prevail in Northern Nevada. It was therefore plainly contrary to the Act to allow such non-prevailing wage rates to set the wage determination at issue here. The Department's authority under the Act is broad, but it is not unlimited. *District of Columbia*, 819 F.3d at 451–52; *Batterton*, 432 U.S. at 425. The Department clearly exceeded its statutory authority in the present case, and the Court should therefore reverse the district court and order the Department to comply with the law.

## II.     The Department Fails to Show Compliance With Its Own Published Regulations; Alternatively, Such Regulations Are in Conflict With the Act and Must be Set Aside.

As further shown in Appellants' opening brief, the district court committed another error by failing to require the Department to comply with its own published regulations. In this regard, the court ignored the text of every provision in the Department's rules that requires limiting wage data to the civil subdivision being surveyed, or to "nearby" or "surrounding" counties. *See* 29 CFR §§ 1.2(a) (definition of "prevailing wage" as the wage paid to the majority of workers in the "area," or the weighted average of such wages if no such wage was paid to a majority of those employed in the "area"); 1.2(b) (definition of "area" which "*shall* mean the city, town, village, county or other civil subdivision *of the State* in which the work is to be performed") (emphasis added); 1.7(a) ("the area [of data collection] will normally be the county…."); 1.7(b) (authorizing consideration of wages in "surrounding counties" in the absence of sufficient wage data); 1.7(c) (authorizing use of older data in the absence of sufficient wage data in the surrounding counties).

Contrary to the Department position [Dept. Br. 24–25], the Department's rules go to great lengths to limit the prevailing wage determination to the "area" of the civil subdivision being surveyed, and at most to "nearby" counties, for the obvious reason that the farther away the search is conducted, the more likely the rates found cannot be said to "prevail" in the local area being surveyed. *See Castillo v. Metro*

*Life Ins. Co.,* 970 F.3d 1224 (9th Cir. 2002) (a term left out of a list (*i.e.*, the State) must have been intentionally excluded).

The Department's rules do not give it the authority to look outside the area being surveyed merely because there have not been sufficient wages directly *reported* to the Department within its arbitrary survey period, as the Department argues here. The Department has presented no evidence that there was in fact insufficient similar construction within the area during the period of the survey. Indeed, the evidence shows that there was similar construction performed during the survey period in Northern Nevada, at significantly lower rates than was paid in Las Vegas; the data was publicly available in the NOLC and NDOT databases, yet the Department refused to consider it. The Department fails to justify this arbitrary action which violated the Department's own rules (even assuming they were properly promulgated) by relying on data beyond the surrounding counties when a more diligent search would have uncovered the prevailing wages in Northern Nevada, not in Las Vegas.

Like the district court, the Department places undue reliance on the isolated reference to the phrase "in the State" in Section 1.7(c) of the Department's rules. But the Department again relies on an impermissible *post hoc* rationalization by citing a rulemaking preamble to this section of the rules, which the Department's ARB never cited or relied on in its decision. [Dept. Br. 25]. As previously argued in Appellants'

opening brief, preambles to agency rules cannot be substituted for the text of the rules themselves. *Safer Chems., Healthy Families v. EPA*, 943 F.3d 397, 420 (9th Cir. 2019) ("[B]ecause the scope provisions [of a rule] are not ambiguous on their face, reference to the preamble discussion would be improper."); *El Comite Para El Bienestar de Earlimart v. Warmerdam*, 539 F.3d 1062, 1070 (9th Cir. 2008) ("[T]he preamble language should not be considered unless the regulation itself is ambiguous."). The Department's brief simply ignores these cases.

Here, Rule 1.7(b) is clear that when there is not sufficient construction in the area during the period being surveyed, the Department may only look to surrounding counties, and Rule 1.7(c) is quite clear that the remedy imposed by the Department for insufficient wage data in the civil subdivision at issue is to use wage data from *previous years*, not to import wage rates from a distant and dissimilar jurisdiction. Thus, if the Department determined there was not sufficient similar construction in the surrounding counties in the past year, it could have utilized wages paid on projects from previous years — without attempting to aggregate all statewide data.

Contrary to the Department's brief, Rule 1.7(c) provides only that if there is not sufficient similar construction "in surrounding counties *or* in the State in the past year," wages paid on projects from previous years may be considered. The Rule does not require as a prerequisite to utilizing data from prior years that there is insufficient data in surrounding counties *and* in the State in the past year.

The Department argues that its own regulations do not expressly prohibit the use of data on a statewide basis, and that when limitations are imposed on what data cannot be used, the agency has expressly prohibited such use. [Dept. Br. 31]. But the regulations do not need to expressly prohibit the use of statewide data — like they do for combining wage data from rural counties and metropolitan counties or between building and residential construction and heavy highway construction — because the Act itself already contains such express prohibition in the form of limiting the wages to those paid in "the civil *subdivision of the* State" where the work will be performed.

Yet, there are specific regulations that confirm the plain language of the Act and prohibit the use of statewide data by expressly limiting that the prevailing wage must be the wage paid in the "area" and that the area means a "subdivision of the State" and therefore cannot mean the entire State. 29 C.F.R. §§ 1.2(a) and (b). The Department argues that these regulations simply establish that the agency will determine the prevailing wage for a subdivision, not that it will ignore data outside that subdivision. [Dept. Br. 31–32]. But in making this argument, the Department ignores the plain language of its own regulations: "the prevailing wage *shall be* the wage paid [to the majority of workers in the classification on similar projects] in the area" and "the term 'area' . . . *shall mean* the city, town, village, county or other civil subdivision *of the State* in which the work is to be performed." 29 C.F.R. §§ 1.2(a)

and (b) (emphasis added). The Department cannot escape this mandatory language in its own regulations to conclude that the "prevailing wage" *may* be the wage paid to a majority of workers in the classification on similar projects throughout the entire State. But that is exactly the Department's position, and the district court's opinion, which are clearly erroneous and contrary to law.

The Department claims that it incorporates statewide data only in "extraordinary" circumstances [Dept. Br. 26], but in reality, the Department has offered no limiting principle whatsoever under its interpretation of Rule 1.7. It is therefore clear that the Department's open-ended interpretation of its wage survey rules is being used to escape the plain language limitations of the Act, discussed above. Importing wage rates from remote locations is becoming the norm, not the exception, and only the courts can stop the Department from abusing its authority.

## III. The Department's Brief Fails to Justify Its Refusal to Consider Publicly Available NOLC Data.

As shown in Appellants' opening brief, the district court committed a final reversible error by failing to require the Department to consider publicly available wage data for the Northern Nevada counties, which if used, would have avoided the Department's unnecessary (and unlawful) reliance on Clark County wage rates. The Department does not dispute that sufficient wage data was in the possession of the NOLC to determine the proper Northern Nevada prevailing rates. The Department knew or should have known such data was publicly available. The Department's

excuses for the failure of the Wage and Hour Division ("WHD") to obtain or use this data, either during or after the wage survey, are unavailing. This is especially true because the Department's regulations require a *continuing* program for obtaining and compiling of wage rate information (29 C.F.R. § 1.3) and instruct the Administrator to consider these specific wage rates determined for public construction by State and local officials pursuant to State and local prevailing wage legislation (29 C.F.R. § 1.3(b)(3)) or any other information pertinent to the determination of prevailing wage rates (29 C.F.R. § 1.3(b)(6)).

It remains undisputed that the Department's WHD sent "inquiries" to the NOLC, but WHD failed to follow up after allegedly receiving no response during its self-imposed and arbitrary survey period. The Department continues to argue that the WHD's lack of follow-up was "rational," because the NOLC data did not "separately" reflect fringe benefit information in addition to wage rates. [Dept. Br. 35]. But the only issue here was the availability of sufficient *wage* data to keep the Department from importing from Las Vegas wage rates known to be well above the prevailing wage rate in Northern Nevada. Contrary to the Department's position, the Department acted arbitrarily and in a manner inconsistent with the Department's published rules.

The Department also has no answer for the fact that a number of classifications of workers reported no fringe benefits at all, so those wage rates

should certainly have been accepted for purposes of the wage survey. [App. Br. 40]. The Department's argument regarding the lack of fringe benefits is a red herring as there are no fringe benefits to report in the various classifications of workers, including dump truck drivers, and therefore the data would be and always has been the same. Quite simply, reporting $26.12/hour without a fringe rate notated or reporting $26.12/hour with an "N/A" or "$0" for the fringe rate reaches the same result. And a review of the NOLC publicly available data confirms that the prevailing wage for dump truck drivers in the relevant civil subdivisions is the non-union rate, and therefore the identified wage is the full package without additional fringe benefits. It bears repeating that the Department had access to the state wage data throughout the survey process — but ignored it. There was no requirement to obtain additional fringe benefit data to avoid importing wage rates from Las Vegas.

The Department also gives no rational justification for the WHD Administrator's refusal to reopen the wage survey once it discovered the existence of the NOLC wage data. [App. Br. 40–41]. As explained by Appellants, the Administrator clearly had the discretion to delay the survey in order to obtain necessary, public wage data in the civil subdivision of the state where covered work was to be performed. And the regulations instruct the Administrator to give "due regard" to this information. 29 C.F.R. § 1.3(b). Even under the Department's erroneous interpretation of its Rule 1.7(c), the WHD Administrator was required to

consider wage submissions in the year prior to the surveyed year before looking anywhere else. But the Department arbitrarily chose not to look for more locally prevailing wage data, either before or after its self-imposed and arbitrary survey deadlines. *See also Mistick Construction*, ARB No. 04-051 (Mar. 31, 2006) (reversing the Administrator's failure to consider local public project data prior to importing wages from other counties).

The Department also does not (and cannot) justify the failure of the WHD Administrator to consider the NOLC data even during the reconsideration process, in order to take into account the glaring wage disparities between Northern and Southern Nevada counties. Had the Administrator done so, she would have realized how inappropriate it was to rely on Clark County data to fill any perceived gaps in the data available in the counties at issue. *See Mistick Constr.,* ARB No. 04-051; *Chesapeake Coalition*, ARB No. 12-010. Therefore, even if the data was for some reason not usable as part of the WHD's wage counting survey methodology, the existence of the Northern Nevada wage data and the disparity between rates in Northern and Southern Nevada should have alerted the Administrator to the inherent dangers associated with importing inflated wage data from Clark County. The Department's brief has no answer for this failure by the Administrator.[4]

---

[4]    *See also In re New Mexico Nat'l Elec. Contractors Ass'n*, ARB No. 03-020 (October 19, 2004) (ARB reversing and remanding because the Administrator ignored the "glaring disparity" of 48% in the prior wage rate and the new wage rate, which "should have alerted the Wage and Hour Division that the survey data likely

The Department argues that Appellants apparently advocate for a standard that would require the WHD to scour all potential data sources and then argues that such an approach would not be feasible. [Dept. Br. 33]. Appellants are not advocating that the Department scour all potential data sources, and the regulations do not require such an approach. But what the Act and regulations do require is that the Department consider wages from the subdivision of the State where work will be performed and not ignore the glaring wage disparities and the data readily available to it. The Department clearly knew that the NOLC had relevant data, which is evidenced by the Department's repeated assertions that it reached out to the NOLC. The NOLC data is publicly available and was throughout the entire survey period and during reconsideration. The Department did not have to scour anything, it merely had to consider the data that was readily available to it and for which the Department clearly knew was relevant.

Contrary to the Department's position, there were no "extraordinary" circumstances that led the Department to import wage rates from Las Vegas into Northern Nevada, where they plainly do not "prevail." The arrogation of authority evidenced in the Department's brief has become almost routine because the

were unrepresentative and that follow-up was necessary") (relied upon by Appellants below, *inter alia*, 3-ER-257–59). Here, it is a glaring disparity of a 115% wage rate increase (truck drivers in Washoe and Storey counties) that was ignored, despite the Administrator of the WHD being specifically directed to this glaring disparity during the review and reconsideration process.

Department has improperly expanded the original scope of its wage survey regulations to the point where they exceed the express limits of the Act itself.

## CONCLUSION

For the reasons set forth above and in Appellants' opening brief, this Court should reverse the district court and remand with instructions to set aside the Department's aggregation of all statewide data within rural or metropolitan counties and effective reliance on distant wage rates in determining the prevailing wages for the local civil subdivisions named at the outset of this brief and in Appellant's filings with the Department.

DATED: May 11, 2023

McDonald Carano LLP

By: */s/ Philip Mannelly*
Adam Hosmer-Henner
Philip Mannelly
100 W. Liberty Street, Tenth Floor
Reno, Nevada 89501
Tel.: (775) 788-2000

Maurice Baskin
LITTER MENDELSON P.C.
815 Connecticut Avenue, NW,
Suite 400
Washington, D.C., 20006-4046
Tel.: (202) 772-2526

*Attorneys for Plaintiffs/Appellants*

# CERTIFICATE OF COMPLIANCE

I certify pursuant to Federal Rule of Appellate Procedure 32(a)(4) and Ninth Circuit Rule 32-1 that the attached brief is set in Times New Roman font, double-spaced, has a typeface of 14 points, and, according to the word count feature of the word processing system used to prepare the brief (Microsoft Word), contains 4,663 words.

DATED: May 11, 2023.

By: */s/ Philip Mannelly*
Adam Hosmer-Henner
Philip Mannelly
McDONALD CARANO LLP
100 W. Liberty Street, Tenth Floor
Reno, Nevada 89501
Tel.: (775) 788-2000

Maurice Baskin
LITTER MENDELSON P.C.
815 Connecticut Avenue, NW,
Suite 400
Washington, D.C., 20006-4046
Tel.: (202) 772-2526

*Attorneys for Plaintiffs/Appellants*

# CERTIFICATE OF SERVICE

I hereby certify that on May 11, 2023, I electronically filed the foregoing Appellants' Reply Brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

_/s/    Jill Nelson_
An Employee of McDonald Carano LLP